## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **MICHAEL SELSOR,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 01-CV-0721-CVE- TLW** |
| | ) | |
| **ANITA TRAMMELL, Warden,** | ) | |
| **Oklahoma State Penitentiary,** | ) | |
| | ) | |
| **Respondent.** | ) | |

### OPINION AND ORDER

On November 22, 2013, Magistrate Judge T. Lane Wilson entered a report and recommendation (Dkt. # 89) concerning the payment of fees and expenses to petitioner's counsel and investigator for services provided during the clemency proceedings. Counsel Gary Peterson and Robert Nance, as well as the investigator Kristi Christopher, object to the report and recommendation.

### I.

In 1975, Michael Selsor was charged with first degree murder and other crimes following the robbery of a convenience store. Selsor v. State, 2 P.3d 344 (Okla. Crim. App. 2000). Selsor and Richard Dodson robbed a convenience store, and each man was armed with a handgun during the robbery. Id. at 347. During the robbery, Selsor shot and killed the clerk, and Selsor later admitted "that before entering the store, he and Dodson had agreed to leave no witnesses." Id. at 348. Selsor received a death sentence on the first degree murder charge, but the sentence was modified to life imprisonment when the Oklahoma Court of Criminal Appeals determined that Oklahoma's death penalty statute was unconstitutional. Selsor v. State, 562 P.2d 926 (Okla. Crim. App. 1977). Selsor

later filed a petition for writ of habeas corpus, and he argued that he was convicted in violation of the Sixth Amendment to the United States Constitution. In 1996, the Tenth Circuit Court of Appeals granted Selsor's petition for writ of habeas corpus and remanded the case for a new trial, because the state court refused to appoint separate attorneys for Selsor and Dodson during a joint trial. Selsor v. Kaiser, 81 F.3d 1492 (10th Cir. 1996). The State elected to retry Selsor and again sought the death penalty. At the re-trial, Selsor was convicted and he was sentenced to death. Selsor v. State, 2 P.3d 344 (Okla. Crim. App. 2000). Selsor exhausted his appellate and post-conviction remedies in state court, but his death sentence was affirmed.

Selsor filed a petition for writ of habeas corpus (Dkt. # 17) in this Court. Selsor's petition was denied, and he appealed the ruling to the Tenth Circuit. While Selsor's case was on appeal to the Tenth Circuit, he was represented by Peterson and the Federal Public Defender's Office for the District of Colorado. However, the Federal Public Defender's Office could provide assistance only while the case on appeal, and it could not participate in state clemency proceedings. Dkt. # 73, at 1-2. The Tenth Circuit affirmed the denial of Selsor's petition. Dkt. # 69. Selsor filed a petition for writ of certiorari in the United States Supreme Court, but his petition was denied. Dkt. # 83. The Tenth Circuit had preliminarily approved some clemency related expenditures, and it continued "to receive clemency vouchers within the scope of the preliminarily approved budget until July 29, 2011." Dkt. # 70. However, the Tenth Circuit directed this Court to "make its own determination as to the reasonableness of any clemency related expenses," and this Court was expressly authorized "to consider whether a new budget conference limited to clemency related issues is warranted . . . ." Id. at 2-3. While the Tenth Circuit retained authority over the clemency budget, it approved a total of $9,247.91 for clemency related expenses for petitioner's counsel and the investigator.

Peterson asked the Court to appoint co-counsel, Nance, to represent petitioner during clemency proceedings, and the Court granted Peterson's request. Dkt. # 76. The Court directed counsel to submit a proposed clemency budget. Counsel submitted a proposed budget requesting preliminary approval of a budget of $51,022.42 for legal and investigative services. Dkt. # 79. The Court referred the matter to the magistrate judge for a budget conference, and the magistrate judge advised counsel that the proposed budget significantly exceeded what was reasonably necessary for a clemency hearing. Dkt. # 81. Counsel filed a second proposed budget seeking approval of a budget of $36,047.42, but counsel was again advised the proposed budget was excessive. The Court preliminarily approved a clemency budget of $12,000. Dkt. # 84.

Petitioner requested a clemency hearing before the Oklahoma Pardon and Parole Board (the Board), and a hearing was set for April 16, 2012. See Dkt. # 90-1, at 1. Petitioner's request for clemency was denied, and he was executed on May 1, 2012. Petitioner's counsel and investigator submitted vouchers for clemency related services, and they request payment of $37,855.70. The magistrate judge reviewed the vouchers, and he entered a report and recommendation (Dkt. #89) stating that many of the expenses incurred by counsel and the investigator were not reasonably necessary. He recommended that the Court approve a total of $16,979.64[1] for services provided to petitioner during the clemency proceedings. Counsel and the investigator object to the report and recommendation, and they ask the Court to approve the full amount requested in the vouchers. Dkt. # 90.

---

[1]    This amount is in addition to the $9,247.91 payment approved by the Tenth Circuit for clemency related expenses.

3

**II.**

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation.  However, the parties may object to the magistrate judge's recommendation within 14 days of service of the recommendation.  Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999).  The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part.  Fed. R. Civ. P. 72(b).

**III.**

Peterson, Nance, and Christopher object to numerous aspects of the report and recommendation, and the Court will consider the objections under a de novo standard of review.  However, there are no objections to the magistrate judge's summary of petitioner's case or the historical overview of clemency, and the Court accepts those portions of the report and recommendation without further review.  The Court also accepts any other portion of the report and recommendation to which there is no objection.

The Court initially notes that objections to specific reductions recommended by the magistrate judge will be considered in light of counsel's and the investigator's awareness of the preliminary budget of $12,000 approved by the Court.  See Dkt. # 84.  Although counsel and the investigator may not have agreed that the budget was adequate, they were on notice that the Court had not approved fees or expenses in excess of $12,000, and they exceeded this budget knowing that

services beyond this amount may not be compensated.[2] Counsel's or the investigator's disagreement with the amount of the preliminary budget will not be considered as a basis to reject the magistrate judge's report and recommendation, but the Court will consider the specific objections to reductions recommended by the magistrate judge under a de novo standard of review.

Compensation Approved by Tenth Circuit

Peterson and Nance object to the magistrate judge's characterization of CJA funds approved by the Tenth Circuit, because they claim that most of these funds were paid to the investigator rather than to petitioner's counsel. Dkt. # 90, at 1-2. They claim that the magistrate judge recommended reductions in attorney fees based on a mistaken belief that counsel received attorney fees approved by the Tenth Circuit, even though most of the funds approved by the Tenth Circuit were for investigative services. Id. at 2.

Counsel mischaracterizes the magistrate judge's report and recommendation. It is undisputed that Tenth Circuit approved $9,247.91 for clemency related expenses incurred before July 29, 2011. Dkt. # 70, at 2; Dkt. # 79, at 5. Counsel represented that $8,953.14 of these funds were for investigative services and that counsel received only $294.77 for attorney fees out of the total amount approved by the Tenth Circuit for clemency related services. Id. at 5. This is consistent with Peterson's representation that he had not devoted much time to the issue of clemency while the case was on appeal because he had been focused on appellate litigation, and clemency became relevant only after the Tenth Circuit denied petitioner's request for habeas relief. Dkt. # 73,

---

[2]     The objection states that counsel and the investigator "neither proposed nor agreed to this figure" and the "$12,000 figure was not an accurate estimate of the true costs of clemency representation." Dkt. # 90, at 8-9. However, the Criminal Justice Act (CJA) guidelines do not require counsel's agreement with the budget approved by the Court, and this is not a legitimate basis to object to the report and recommendation.

at 3.  When the magistrate judge referred to funds approved by the Tenth Circuit, he referred to the $9,247.91 as funds "associated with state clemency proceedings" or as "funds already received from the Tenth Circuit."  Dkt. # 89, at 2; id. at 22.  Although there is one reference in the report and recommendation that "petitioner's counsel was paid $9,247.91 for fees and expenses," this remark was made in the context of his analysis that a clemency budget does not ordinarily exceed $10,000 total, and the magistrate judge was making the point that petitioner had already received nearly $10,000 before counsel even submitted a clemency budget to this Court. Id. at 14.  Nothing in the report and recommendation suggests that the magistrate judge attributed all or a substantial amount of the $9,247.91 approved by the Tenth Circuit as attorney fees or expenses.  There is no basis for the Court to conclude that the magistrate judge mistakenly believed that counsel received a substantial amount of the $9,247.91 approved by the Tenth Circuit for services related to clemency or that he recommended reductions in payment to counsel based on this alleged belief.  Instead, it is clear that the magistrate judge referred to the funds approved by the Tenth Circuit as part of the overall clemency budget, and counsel's objection is overruled.

Investigator Work to Edit Video

Peterson, Nance, and Christopher object to the magistrate judge's recommendation that Christopher not be compensated for 11 hours she spent editing video footage for submission of a video to the Board.  They argue that this work was necessary to allow the petitioner to present a coherent and non-repetitive video of interviews with persons offering testimonials in support of petitioner, and they argue that the magistrate judge misunderstood the limitations on video and documentary evidence imposed by the Board.  Dkt. # 90, at 3.

6

The Court agrees with the magistrate judge that it was not reasonably necessary for the investigator to spend 11 hours editing video footage. Under 18 U.S.C. § 3599(f), the Court is required to pay only for expert and investigative expenses that are "reasonably necessary." Under this standard, a defendant is required to show "a 'substantial need' for the requested assistance." Gary v. Warden, Georgia Diagnostic Prison, 686 F.3d 1261, 1268 (11th Cir. 2012). While it may have been reasonably necessary for the investigator to conduct interviews, counsel knew that they had a limited budget and they have not shown that it was reasonably necessary for the investigator to incur nearly $1,000 in expenses to edit the video footage. Counsel argues that it was necessary to edit the video presentation because of limits placed on documentary and video evidence by the Board but, as the magistrate judge noted, counsel could have presented the same evidence just as effectively by written or oral submission at the clemency hearing. Dkt. # 89, at 19. The investigator will not be compensated for the time spent editing video footage.

Letters from Petitioner's Ex-Wife and Son

The magistrate judge recommended that the Court reduce payment to Christopher from 11 hours to 2.8 hours for her travel to Tulsa to request letters from petitioner's ex-wife and son. Dkt. 89, at 19. Counsel argues that the Christopher should be fully compensated for her efforts to obtain letters from petitioner's ex-wife and son, because these letters were critical to petitioner's efforts to obtain clemency. Dkt. # 90, at 5-6. As part of petitioner's clemency packet, he included a letter from his ex-wife, but there was no letter from his son. Counsel and Christopher assert that Christopher contacted petitioner's ex-wife by telephone or mail and requested letters on behalf of petitioner, but neither petitioner's ex-wife or son would send letters to Christopher. They claim that it would have cast petitioner in a negative light if his ex-wife and son were unwilling to submit

letters on his behalf, and it was necessary for Christopher to travel to Tulsa to request these letters in person.

The magistrate judge recommended an 80% reduction in the amount sought by Christopher for her work to obtain these letters, because the time records do not show if Christopher attempted to contact petitioner's ex-wife and son by telephone or mail and the letters were likely to be of minimal value.  Christopher argues that she did attempt to contact the petitioner's ex-wife and son by phone, and payment for this work was approved by the Tenth Circuit.  Dkt. # 90, at 6. Christopher also argues that the time records do not support the magistrate judge's statement that she spent 11 hours attempting to obtain these letters.  The Court will assume that Christopher did attempt to contact petitioner's ex-wife and son by telephone before traveling to Tulsa and that she billed less than 11 hours for her efforts.  Even so, the Court agrees with the magistrate judge that Christopher has not shown that the work was reasonably necessary.  It is apparent that petitioner's ex-wife and son were reluctant to provide letters and, in fact, petitioner's son never provided a letter to Christopher.  While they may have felt that it was important for Christopher to travel to Tulsa, they have not shown that they realistically expected petitioner's son to draft a letter or that the letter from petitioner's ex-wife was of substantial value in their efforts to obtain clemency for petitioner. The Court finds that the reduction recommended by the magistrate judge is appropriate, and Christopher will be compensated for 2.8 hours of work for this work.

Administrative Work in Preparing Budget and Supervising Investigator

The magistrate judge recommended that counsel not be reimbursed for 16.7 hours[3] spent on administrative tasks related to preparation of the budget and the filing a motion for the appointment of co-counsel.  He also recommended that Peterson not be reimbursed for 11.7 hours of time for supervising the investigator.  Dkt. # 89, at 18-20.  Counsel objects to these proposed reductions and they argue that they should be compensated for this work just as if they were billing a private client. Dkt. # 90, at 9.

Much of counsel's objection to reductions for these administrative tasks is based on an assumption that the magistrate judge recommended objections based on unstated "budgetary restrictions" imposed on the federal judiciary, and they claim that they should be paid just as if they were representing a private client.  Id. at 9.  They argue that "[i]f the judiciary lacks the money to pay for 'administrative tasks' that it wants performed, then it should not be ordering private counsel to perform them."  Id. at 10.  Counsel is reminded that "CJA service is first a professional responsibility, and no lawyer is entitled to full compensation for services the public good."  In re Carlyle, 644 F.3d 694, 699 (8th Cir. 2011).  In the context of an attorney's objections to reductions in his clemency budget, the Eighth Circuit stated that:

> It is . . . clear that Congress did not intend to provide full compensation and that it contemplated appointments of private counsel to supplement the efforts of professional defender organization.  Thus, although the increased maximum rates envisioned greater participation by the private bar, the [CJA] also presupposes recognition by private attorneys of their professional obligation to render services for those unable to pay.  The [CJA] is in no way an attorney's full-employment act.

---

[3]      The total time of 16.7 hours includes 14.5 hours preparing proposed budgets, 1.9 hours researching and drafting a motion for appointment of co-counsel, and 0.3 hours spent in telephonic hearings with the magistrate judge on budget issues.

Congress merely intended that those attorneys who devote themselves to the time-honored tradition of service should not go entirely without compensation.

Id.  In addition to the general principle that appointments under the CJA should be considered as public service, the magistrate judge also noted that "[i]mplicit in the CJA is that counsel will use good judgment in determining the scope and extent of legal services provided and that they will be paid only for those services that are reasonably necessary." Dkt. # 89, at 14.  This is especially true when counsel knew that the Court had preliminarily approved a budget of $12,000.

In this case, counsel could have limited the amount of time spent on administrative tasks or could have determined what work was reasonably necessary in light of the approved budget. Instead, "petitioner's counsel appears to have left no stone unturned" and they prepared for the clemency proceedings as if they had no budgetary restrictions.  Id.  While the Court commends counsel for their thoroughness, the Court agrees with the magistrate judge that counsel should not be compensated for administrative tasks such as preparing a budget and supervising the investigator.[4]

Preparation for Clemency Proceeding

The magistrate judge recommended a 70% reduction in the amount sought by counsel for drafting the clemency brief and for preparation for the clemency hearing.  Peterson spent 43.4 hours

---

[4]   Peterson could also be objecting to the magistrate judge's recommendation that a portion of his compensation be transferred to the investigator, because Peterson directed the investigator to perform work without considering whether the work was reasonably necessary.  Dkt. # 89, at 20; Dkt. # 90, at 11.  However, the Court agrees with the magistrate judge that some of Peterson's compensation should be transferred to the investigator. Counsel, not the investigator, took the lead on determining what work was reasonably necessary, and it is clear that counsel gave little thought to possible budgetary restrictions. It would not be reasonable to punish the investigator for work performed at the direction of counsel, and $1,485 of Peterson's compensation will be transferred to Christopher.

researching and drafting the clemency brief and 6.5 hours preparing for the hearing. Nance spent 7.1 hours researching and drafting the clemency brief, 12.1 hours reviewing notes, 12.8 hours reviewing court records, and 15.2 hours preparing for the hearing. In addition, Peterson recorded 5.6 hours for corresponding with Nance and Federal Public Defender's Office, and Nance spent 7.4 hours in telephone conferences and corresponding by e-mail. Counsel argues that the magistrate judge mistakenly believed that counsel " wasted 70% of the time we spent on this life-or-death matter," and they claim that all of their preparation for the clemency hearing was necessary. Dkt. # 90, at 12-13.

Counsel mischaracterizes the magistrate judge's report and recommendation, and he did not suggest that counsel's efforts were "wasted" or that they should have "tossed off a slapdash brief, coasted without effort through the hearing, and packed our client off to an inevitable execution." Id. at 13. The magistrate judge noted that the arguments raised in the clemency brief were straightforward concepts of justice and fairness, and he did not find any complex legal arguments or strategies that justified the amount of time spent in preparation for the clemency hearing. On the brief alone, counsel spent a total of 50.5 hours, and they have requested $8989[5] in compensation for this time. That amount is almost three-quarters of the entire clemency budget preliminarily approved by the Court. Counsel also spent 46.6 hours preparing for the clemency hearing, and they seek $8294.80 in compensation for this time. The magistrate judge did not make any finding that the work was "wasted," and his report and recommendation did not criticize counsel for the quality of their work. Dkt. # 89, at 20-21. Instead, he found that the time spent by counsel in drafting the clemency brief and preparing for the hearing was excessive in light of the budget approved by the

---

[5]       This amount was calculated using the hourly rate of $178 billed by counsel.

court and the general purpose of clemency proceedings. <u>Id.</u> at 14-15, 20-21.  The Court agrees with the magistrate judge that counsel's request for over $17,000 in preparation for approximately a two hour hearing is excessive, and the magistrate judge's recommendation to reduce counsel's fees for this work by 70% is accepted.

## IV.

The Court has reviewed the magistrate judge's report and recommendation and the objections of petitioner's counsel and investigator, and finds that the report and recommendation should be accepted as entered.  Counsel and the investigator received preliminary approval of a $12,000 clemency budget, and they have asked the Court to pay more than three times that amount for clemency related services.  While the Court appreciates the time and effort spent on petitioner's clemency proceedings, counsel and the investigator knew that they were exceeding their budget and that they might not be compensated for services provided in excess of the budget.  The magistrate judge recommended that the Court pay $16,227.55, or over $4,000 more than the preliminary budget, and this adequately compensates counsel and the investigator for their services.

**IT IS THEREFORE ORDERED** that the report and recommendation (Dkt. # 89) is **accepted**, and counsel and investigator fees and expenses in the amounts recommended in the report and recommendation shall be approved.  <u>See</u> Dkt. # 89, at 21-22.  The Court will sign the vouchers as reduced, and forward the vouchers for payment.

**DATED** this 29th day of January, 2014.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

12